UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAVIER EMILIO MARTINEZ,

　　　　　　　　Petitioner,

　　v.

BRUCE SCOTT, *et al.*,

　　　　　　　　Respondents.

CASE NO. 2:25-cv-01538-TSZ-GJL

REPORT AND RECOMMENDATION

Noting Date: **September 11, 2025**

Petitioner Javier Emilio Martinez, through counsel, initiated this action on August 13, 2025, by filing a federal habeas Petition pursuant to 28 U.S.C. § 2241 and a Motion for Temporary Restraining Order ("TRO"). Dkts. 1, 2.

The instant Petition challenges a bond hearing held before an Immigration Judge ("IJ") on August 4, 2025, at the direction of this Court in *Martinez v. Jaddou, et al.*, No. 2:24-cv-01960-TSZ, Dkt. 21 (W.D. Wash. Jul. 7, 2025). Dkt. 1. Petitioner argues that the bond hearing did not comply with this Court's Order, and that the denial of bond violated the Due Process Clause of the Fifth Amendment. *Id.* In his TRO Motion, Petitioner requests a prompt hearing before this Court to determine whether Petitioner's continued detention violates due process or,

in the alternative, an order directing Petitioner's immediate release until such a hearing may be held. Dkt. 2.

On August 18, 2025, United States District Judge Thomas S. Zilly screened Petitioner's TRO Motion and determined it was an improper request for a TRO. Dkt. 12. Thereafter, Petitioner's Motion and underlying Petition were referred to United States Magistrate Judge Grady J. Leupold. *Id.*

Upon review of the relevant record, the undersigned recommends that the Petition (Dkt. 1) and TRO Motion (Dkt. 2) be **DENIED** in light of Petitioner's failure to exhaust available administrative remedies before initiating this action. It is further recommended that this action be **DISMISSED without prejudice**.

## I.    BACKGROUND

This Court previously summarized the factual background for Petitioner's immigration detention and some of his previous challenges through the relevant administrative scheme as follows:

> Petitioner entered the United States in 1987 as a lawful permanent resident. Petitioner was convicted in the Western District of Washington for conspiracy to distribute cocaine in 2000 and sentenced to 20 months of imprisonment; in 2005 he also served 60 days of confinement for violating conditions of his supervision. Petitioner was again convicted in 2013 for conspiracy to distribute cocaine in 2013 and sentenced to 60 months of imprisonment. Petitioner notes after his arrest in 2013, he was released pending trial, remained in the community after sentence was imposed, and reported to prison as required to begin service of his sentence.
>
> Petitioner completed his criminal sentence in 2018 and was taken into immigration custody. An IJ denied bond in October 2018, and Petitioner sought review which led to several hearings in 2023 and 2024 in which an IJ denied Petitioner's requests for protection against removal.

*Martinez*, No. 2:24-cv-01960-TSZ, Dkt. 15 at 2–3.

*//*

REPORT AND RECOMMENDATION - 2

**A.    First Court-Ordered Bond Hearing**

The Court further described its first court-ordered bond hearing accordingly:

> During his immigration proceedings, Petitioner also sought habeas relief from detention in 2018 in *Martinez v. Clark*, 2:18-cv-1669-RAJ-MAT. In this case, the Court ordered the IJ conduct a bond hearing. The IJ conducted a bond hearing in 2019 and denied bond finding the government had proven by clear and convincing evidence that Petitioner is both a flight risk and danger to the community. The Board of Immigration Appeals (BIA) dismissed Petitioner's appeal.

*Id.* Prior to filing his BIA appeal regarding the 2019 bond hearing, Petitioner filed a second habeas petition (hereinafter "2019 Petition") and moved for a TRO (hereinafter "2019 Motion"). *Martinez v. Clark*, No. 2:19-cv-01945-RAJ, Dkts. 1, 3 (W.D. Wash.). As he does in the instant case, Petitioner sought immediate release from confinement, arguing that absent clear and convincing evidence demonstrating he is a flight risk or danger to the community, his continued detention was in violation of this Court's order directing the bond hearing and of due process. *Id.*

The Court denied the 2019 Motion and the 2019 Petition for failure to exhaust available administrative remedies. *Martinez*, 2:19-cv-01945-RAJ, Dkt. 14, 15. Thereafter, Petitioner exhausted his administrative remedies regarding the 2019 bond hearing and filed a third habeas petition challenging the denial of bond (hereinafter "2020 Petition"). *See Martinez v. Clark,* No. 20-cv-780-TSZ (W.D. Wash., filed May 22, 2020).

This Court denied the 2020 Petition, and Petitioner appealed. *Martinez*, 20-cv-780-TSZ, Dkts. 12, 14. The Ninth Circuit affirmed this Court's decision. *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024). In particular, the Ninth Circuit rejected Petitioner's arguments that, in reviewing the 2019 bond hearing, (1) the BIA did not apply the clear-and-convincing evidence standard, (2) failed to consider all the evidence, and (3) impermissibly shifted the evidentiary burden onto Petitioner, stating:

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider

all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771–72.

There are no such red flags here. At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community. It then reviewed the record, including Martinez's drug trafficking convictions, and concluded there was "strong evidence" of his dangerousness. It credited Martinez's significant rehabilitation efforts, such as keeping a clean record while on pretrial release and in prison. But it concluded, under "the totality of the evidence," that the serious nature of Martinez's convictions and his history of reoffending, even after several years of sobriety, rendered him a danger to the community. Contrary to Martinez's claim, the BIA explicitly noted the evidence of his release on his own recognizance and his self-report to prison during his 2013 criminal proceedings. Thus, we conclude that the BIA applied the correct burden of proof here.

*Martinez*, 124 F.4th at 785–86.

## B.    Second Court-Ordered Bond Hearing

In November 2024, Petitioner filed a fourth habeas petition (hereinafter "2024 Petition") arguing (1) his prolonged detention violates due process and warrants immediate release and (2) that, in the absence of immediate release, due process requires he be granted an additional bond hearing during which the Government must prove he is a flight risk or a danger to the community by clear and convincing evidence. *Id.* at 3–4. Petitioner further requested that the additional bond hearing be held by this Court, not an IJ. *Id.*

The Court recommended the 2024 Petition be granted in part and denied in part. *Id.* at 8–9. As five years had passed since Petitioner's first bond hearing, the Court concluded that "Petitioner's continued detention without another individualized bond hearing in which the Government must show he is a continued risk of flight or danger to the community would violate

his Fifth Amendment due process rights." *Id.* at 8. However, the Court rejected Petitioner's

request for immediate release and his request that the bond hearing be conducted by this Court,

concluding:

> Petitioner is entitled to an order of release if he shows his detention is indefinite
> within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). He makes no such
> showing. Petitioner argues he should be released under *Nadarajah v. Gonzales*, 443
> F.3d 1069 (9th Cir. 2006). This case involved a person in which there was no
> significant likelihood of removal in the foreseeable future and is thus inapplicable
> here. As there is no showing Petitioner is subject to indefinite detention, the Court
> declines to recommend immediate release. The Court also declines to conduct a
> hearing to determine whether Petitioner should be released. The Court entertains
> Petitioner's habeas petition to determine whether due process calls for a second
> bond hearing. The Court finds another bond hearing should be ordered but the Court
> does not perform functions reserved to the Executive branch such as making a bond
> determination. *C.f.* 8 U.S.C. § 1226(C)(4) (Attorney General may release an alien).

*Id.* at 8–9.

On July 7, 2025, United States District Judge Thomas S. Zilly adopted and affirmed the

recommendations outlined above and ordered that Petitioner be provided a bond hearing within

60 days at which "[t]he Government bears the burden to show by clear and convincing evidence

that Petitioner continues to pose a risk of flight or a danger to the community." *Martinez*, No.

2:24-cv-01960-TSZ, Dkt. 21 at 2.

A bond hearing was held before an IJ on August 4, 2025. Dkt. 9 (Lambert Declaration).

The IJ denied bond, and Petitioner initiated these federal habeas proceedings eight days later on

August 13, 2025. *See* Dkts. 1, 2.

## II.    DISCUSSION

In the instant Petition and TRO Motion, Petitioner challenges the IJ's denial of bond on

August 4, 2025, arguing the IJ's decision was not supported by clear and convincing evidence

supplied by the Government. Dkt. 1 at 2, 8–9; Dkt. 2 at 16–22. He argues further that the IJ erred

in refusing to permit Petitioner's witnesses to testify and in the manner in which the IJ

1    questioned those witnesses. Dkt. 1 at 9; Dkt. 2 at 13–16. In light of these errors, Petitioner

2    contends his continued detention as ordered by the IJ is in violation of an Order by this Court and

3    of the Due Process Clause. Dkt. 1 at 10–11. The emergency relief requested in the TRO Motion

4    is a prompt hearing before this Court requiring the Government to produce clear and convincing

5    evidence demonstrating that Petitioner is a flight risk or danger to the community or, in the

6    alternative, an order directing Petitioner's immediate release until such a hearing can be held.

7    Dkt. 2 at 2, 26.

8         In their Response to the TRO Motion, Respondents argue that the Court should decline to

9    issue a TRO and deny the Petition because Petitioner failed to exhaust administrative remedies

10   through the BIA. Dkt. 8. In his Reply, Petitioner urges that the Court should waive the

11   exhaustion requirement and grant his request for a TRO. Dkt. 11. The Court agrees with

12   Respondents.

13        As stated above, the Court has already concluded that Petitioner's Motion is not a proper

14   request for a TRO. Dkt. 12. Even if it were, the undersigned concludes that Petitioner's failure to

15   exhaust available administrative remedies prevents him from demonstrating a likelihood of

16   success on the merits as required to obtain this extraordinary form of relief. *Winter v. Nat. Res.*

17   *Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

18   Furthermore, because Petitioner has not yet presented his claims for review by BIA and because

19   Petitioner has not shown that waiver of the exhaustion requirement is appropriate in this case, the

20   undersigned concludes the Petition (Dkt. 1) should be **DENIED** for failure to exhaust.

21   **A.    Applicable Law**

22        "On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional

23   requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n. 3 (9th Cir. 2011). That is, the necessity of

24   administrative exhaustion in § 2241 actions is governed by sound judicial discretion. *McCarthy*

1    v. Madigan, 503 U.S. 140, 144 (1992), *superseded by statutory amendment as noted in Booth v.*

2    *Churner*, 532 U.S. 731, 738(2001). Nevertheless, "[p]rudential limits, like jurisdictional limits

3    and limits on venue, are ordinarily not optional." *Castro–Cortez v. INS*, 239 F.3d 1037, 1047

4    (9th Cir. 2001), *abrogated on other grounds by Fernandez–Vargas v. Gonzales*, 548 U.S. 30,

5    35–36, n. 5 (2006).

6          To determine whether prudential exhaustion is appropriate, courts consider the following

7    factors, often referred to as the *Puga* factors: (1) whether "agency expertise makes agency

8    consideration necessary to generate a proper record and reach a proper decision," (2) whether

9    "relaxation of the requirement would encourage the deliberate bypass of the administrative

10   scheme," and (3) whether "administrative review is likely to allow the agency to correct its own

11   mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th

12   Cir. 2007) (quoting *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). That is,

13   under the *Puga* factors, courts should require administrative exhaustion where it would aid in

14   developing a more complete factual record for federal judicial review, prevent forum shopping,

15   and conserve federal judicial resources by permitting agencies to correct their own mistakes

16   where they are likely to do so. *Id.*

17         Even if the *Puga* factors weigh in favor of prudential exhaustion, a petitioner may avoid

18   the requirement by demonstrating one of the following *Laing* factors applies in their case: (1)

19   "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative

20   remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative

21   proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting

22   *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)); *see Aden v. Nielsen*, No.

23   2:18-cv-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("The party moving

24   the court to waive prudential exhaustion requirements bears the burden of demonstrating that at

least one of these *Laing* factors applies.") (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018)).

**B.    Analysis**

1.    Each of the *Puga* factors weighs in favor of exhaustion in this case.

The Court first examines the three *Puga* factors to determine whether administrative exhaustion is appropriate in this case. The first *Puga* factor asks whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision." *Puga*, 488 F.3d at 815. This Court has consistently recognized that the BIA has subject-matter expertise for individual immigration bond decisions and the authority to review appeals of such decisions by IJ's. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025); *Aden v. Nielsen*, No. 18-cv-1441-RSL, 2019 WL 5802013 (W.D. Wash. Nov. 7, 2019). In addition to agency expertise, an appeal to the BIA would generate a more complete record for review of the issues presented in this case.

Petitioner seeks review of his individual bond determination and, in particular, whether the Government demonstrated his dangerousness by clear and convincing evidence. However, at the current juncture, the Court is without a written decision by the IJ to aid in its review of Petitioner's claims. If Petitioner were required to present his claims to the BIA, the BIA would expand the available record by requiring the IJ to provide "a written decision fully explaining why Petitioner was denied bond." *Martinez*, 2:19-cv-01945-RAJ, Dkt. 14 at 7–8. And, as stated by the Ninth Circuit when reviewing similar claims raised by Petitioner in his 2020 Petition, "the determination [of] whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact." *Martinez*, 124 F.4th at 779 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)). As such, the issues in this case are readily distinguishable from those involving "purely

1   legal questions" that do not require "an administrative appellate record." *Rodriguez*, 779 F. Supp.

2   3d at 1251 (citing *Hernandez*, 872 F.3d at 989 (9th Cir. 2017)).

3       In light of the BIA's subject-matter expertise and its ability to provide a more complete

4   record for review of Petitioner's claims, the Court concludes the first *Puga* factor weighs in favor

5   of exhaustion.

6       Next, the second *Puga* factor asks whether "relaxation of the requirement would

7   encourage the deliberate bypass of the administrative scheme." *Puga*, 488 F.3d at 815. On this

8   factor, courts consider whether resolution of the case at bar would answer a recurring legal

9   question thereby reducing the number of future habeas filings. *See Hernandez*, 872 F.3d at

10  989 (waiving prudential exhaustion requirement in part "because, once the questions presented

11  here are decided, they should cease to arise").

12      For example, this Court recently found that administrative exhaustion was not required

13  by the lead plaintiff in a class action lawsuit filed on behalf of immigration detainees held

14  without bond hearings. *Rodriguez*, 779 F. Supp. 3d at 1250–55. In determining that relaxing the

15  administrative exhaustion requirement would reduce, rather than increase, the number of habeas

16  petitions, the Court in *Rodriquez* distinguished the "purely legal" question presented for class

17  certification from those challenging "the application of an evidentiary standard to an individual

18  bond determination." *Id.* at 1251 (citing *Aden*, 2019 WL 5802013, at *2).

19      The distinction drawn in *Rodriguez* is instructive in this case. Because of the fact-

20  intensive inquiry involved in reviewing individual bond determinations, federal judicial

21  resolution of this case would resolve the question of whether Petitioner—and Petitioner alone—

22  is entitled to bond as a matter of constitutional law. Thus, allowing Petitioner to bypass the

23  administrative scheme would not provide concrete guidance for a large swath of future

24  administrative proceedings. Rather, relaxing the exhaustion requirements in this case would

1    encourage others to immediately seek habeas review if they deem the federal courts to be a more

2    sympathetic forum. Therefore, the Court concludes that the second *Puga* factor also weighs in

3    favor of exhaustion.

4        Finally, the third *Puga* factor asks whether "administrative review is likely to allow the

5    agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d

6    at 815. The BIA has the authority to correct the erroneous factual determinations and evidentiary

7    errors alleged in the Petition. 8 C.F.R. § 1003.1(d)(3)(i)–(ii). Therefore, allowing the BIA to

8    consider an appeal will give the agency an opportunity to correct any mistakes in Petitioner's

9    case and potentially preclude the need for judicial review. As such, the Court concludes the third

10   and final *Puga* factor weighs in favor of exhaustion.

11       Taken together, the three *Puga* factors weigh strongly in favor of requiring exhaustion.

12   The first factor supports exhaustion because the BIA possesses subject-matter expertise in bond

13   determinations and can generate a more complete record to facilitate meaningful review. The

14   second factor also favors exhaustion, as relaxing the requirement in this case would risk

15   encouraging detainees to bypass the administrative process without yielding broader guidance

16   for future cases. Finally, the third factor confirms that exhaustion is appropriate, since the BIA

17   has the authority to correct the alleged factual and evidentiary errors, potentially obviating the

18   need for judicial intervention. Because all three *Puga* factors weigh in favor of exhaustion,

19   Petitioner may only avoid the requirement by demonstrating one of the *Laing* factors applies in

20   this case.

21       2.    Petitioner fails to show that any of the *Laing* factors apply in this case.

22       In arguing that he should not be required to exhaust administrative remedies, Petitioner

23   invokes two of the four *Laing* factors.

24

REPORT AND RECOMMENDATION - 10

1      First, Petitioner argues that administrative remedies in this case are inadequate and not

2   efficacious. Dkt. 11 at 9. In particular, Petitioner argues that requiring him to present his claims

3   to the BIA could unnecessarily delay relief for six to twelve months. *Id.* at 10. This argument

4   assumes that, irrespective of the evidence and arguments presented for review, the BIA will deny

5   Petitioner relief. Moreover, this assumption is made without showing that such a result is likely

6   given any purported inadequacies and inefficiencies in the administrative review process.

7      Even assuming *arguendo* Petitioner had shown that immediate federal judicial review of

8   his claims would be *more efficient*, this is not the same as demonstrating that the available

9   administrative processes are inadequate and inefficient. Indeed, a version of Petitioner's

10  argument could be made by virtually every litigant attempting to bypass the administrative

11  process by proceeding directly to the federal courts. Permitting Petitioner to avoid the

12  administrative scheme based solely on the additional time required to pursue administrative

13  remedies would create an exception to exhaustion that would swallow the rule. Thus, the Court

14  finds that Petitioner has failed to demonstrate the exhaustion requirement should be waived

15  based on inadequate or ineffective administrative remedies.

16     Next, Petitioner argues he will suffer irreparable harm if required to exhaust available

17  administrative remedies. Dkt. 11 at 12. The relevant harm about which Petitioner complains is

18  his continued detention closely following a bond hearing and the remedy he seeks in this Court is

19  substantially the same as the remedy that will be pursued before the BIA: review of the IJ's bond

20  decision. Therefore, the circumstances in this case are identical to those presented in his 2019

21  Petition.

22     As before, Petitioner "cites no authority for the position that detention following a bond

23  hearing constitutes irreparable harm sufficient to waive the exhaustion requirement." *Martinez*,

24  2:19-cv-01945-RAJ, Dkt. 14 at 9 (quoting *Aden*, 2019 WL 5802013, at *3); *see also Hilario*,

1   2020 WL 2542022, at *7 (rejecting irreparable harm argument premised on allegedly unlawful

2   denial of bond because it "begs the constitutional questions presented in his petition by assuming

3   that petitioner has suffered a constitutional injury"). Furthermore, irrespective of the errors

4   Petitioner assigns to his bond hearing, the fact remains that he received a bond hearing less than

5   two weeks before initiating this action. This case is thus readily distinguishable from those

6   involving continued detention without *any* process. *See, e.g.*, *Rodriguez*, 779 F. Supp. 3d at

7   1253–54 (waiving administrative exhaustion for class of immigration detainees challenging

8   denial of *bond hearings* by IJs, in part, because continued detention without process constituted

9   irreparable harm) (collecting cases).

10          This case is also distinguishable from those where a petitioner presented evidence of the

11  individualized harm they will suffer from continued detention. *See, e.g.*, *Rodriguez*, 779 F. Supp.

12  3d at 1253–54 (detailing uncontested evidence of "unique harm" lead plaintiff would face in

13  continued detention, including health issues, lack of access to medication, financial burdens, and

14  inability to support family); *Hilario Pankim v. Barr,* No. 20-CV-02941-JSC, 2020 WL 2542022,

15  at *7 (N.D. Cal. May 19, 2020) (exhaustion requirement appropriately waived in light of

16  evidence that continued detention would have adverse effects on petitioner's mental health by

17  worsening his PTSD from prior assault in prison); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d

18  993, 1003 (N.D. Cal. 2018) (exhaustion requirement waived upon petitioner's showing that

19  continued detention would interfere with her ability to present defense in ongoing criminal

20  prosecution and to care for her 9-year-old daughter). Petitioner makes no such showing here.

21          Therefore, the Court finds that Petitioner has failed to demonstrate irreparable harm

22  sufficient to overcome the administrative exhaustion requirement.

23          As Petitioner does not invoke the other *Laing* factors, he has failed to demonstrate that

24  the administrative exhaustion requirement should be waived in this case. Accordingly, Petitioner

must exhaust his administrative remedies before he can obtain federal habeas review of his claims. Because Petitioner has yet to do so, the Court recommends that the Petition and accompanying TRO Motion be **DENIED** for failure to exhaust.

### III.    CONCLUSION

For the reasons set forth above, the undersigned recommends that the Petition (Dkt. 1) and TRO Motion (Dkt. 2) be **DENIED** and this action be **DISMISSED without prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **September 11, 2025**, as noted in the caption.

Dated this 27th day of August, 2025.

Grady J. Leupold
United States Magistrate Judge